UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

FLORA LEPORE,

                  Plaintiff,                        05 Civ. 6165 (HB)

                       v.                              AFFIDAVIT IN SUPPORT
                                                   OF MOTION TO DISMISS

NEW YORK HOTEL TRADES COUNCIL
EMPLOYER BENEFIT FUNDS,

                 Defendant
_____x

STATE OF NEW YORK     )
COUNTY OF NEW YORK    )

          WILLIAM TORRES, being duly sworn, deposes and says:

## Introduction

       1.     I am the Director of Human Resources of defendant New York Hotel Trades Council and Hotel Association of New York City, Inc., Employee Benefit Funds (the "Funds"). I submit this affidavit in support of the Funds' Motion to Dismiss the Complaint in this matter.

       2.     The Funds submit that plaintiff's claim pursuant to the Family & Medical Leave Act ("FMLA") must be dismissed for failure to state a claim for which relief may be granted.

       3.     Upon dismissal of plaintiff's FMLA claim, plaintiff's pendant claims pursuant to Section 8-107(a) of the New York City Human Rights Law and Section 296 of the New York State Executive Law (Human Rights Law) must also be dismissed for lack of subject matter jurisdiction.

## The Complaint

       4.     On or about August 3, 2005, plaintiff served the Complaint in this matter, a copy of which is annexed hereto as Ex. A.

       5.     The Complaint alleges, inter alia, that the Funds obstructed plaintiff's rights to leave under the FMLA, discriminated against her because of her gender in violation of HRL and NYCHRL and retaliated against her "because of her opposition to the above-mentioned discrimination." See Ex. A, par. 1.

6.      With respect to plaintiff's FMLA claim, the only factual allegation in the Complaint is that the Funds "refused to even acknowledge plaintiff's timely application for FMLA leave, thereby obstructing her right to leave under the FMLA." Ex. A, par. 5(s). The Complaint further asserts that after plaintiff applied for FMLA leave, the Funds "scrumptiously advertised a job opening for plaintiff's position on Monster.com." Ex. A., par. 5(v).

7.      There is no allegation in the Complaint that plaintiff was denied any leave time under the FMLA, that her medical benefits were discontinued during her leave or that the Funds failed to restore her to her position at the end of her leave. In fact, as will be explained below, plaintiff was given more than 12 weeks of FMLA leave, her medical benefits were continued during her leave and she was restored to her position on July 18, 2005.

**Plaintiff's FMLA Leave**

8.      Plaintiff has been employed by the Funds as a Project Manager since April 15, 2002.

9.      Plaintiff's primary duty as Project Manager involves training Funds' employees on various computer systems utilized by the Funds. Plaintiff is the only employee of the Funds who provides such training.

10.     In early 2005, plaintiff and Frank Davies, a Human Resources Trainer, brought to my attention that there was no one at the Funds who could provide back up as a trainer. As a result , the Funds decided that it would be advisable to hire an additional staff person solely to provide back up for plaintiff and Mr. Davies for their training responsibilities and I placed a blind in the New York Times for a Technical Trainer on or about March 27, 2005.   A copy of the ad is annexed hereto as Ex. B.

11.     On or about March 14, 2005, plaintiff submitted an Employee FMLA Request Form.  The Form requested intermittent leave for plaintiff's own serious health condition.  The certification from plaintiff's physician indicated that plaintiff was not unable to perform any work at all and not unable to perform the essential function of the job but that plaintiff needed to be absent for treatment.  A copy of the Employee Request Form is annexed hereto as Ex. C.

12.     Although the Form indicated that plaintiff was seeking intermittent leave, there were no specifics as to when and with what frequency plaintiff needed to be absent from work.  In order to understand plaintiff's anticipated schedule during her intermittent leave, I spoke to her on March 17, 2005, and requested that her physician provide clarification about when she would be required to be absent from work.

13.     By letter dated March 21, 2005, her physician reaffirmed that plaintiff needed intermittent leave. The letter further stated that working full-time was too

stressful for plaintiff and that until her condition was stabilized, "a flexible work schedule is necessary." Finally, the letter stated that the physician would be treating plaintiff on a weekly basis. The letter dated March 21, 2005 is annexed hereto as Ex. D.

14.     This letter did not clarify plaintiff's anticipated absences, and in fact made her request less clear. Since plaintiff's physician was now stating that plaintiff could not work full-time and that she needed a flexible work schedule, we could not determine if plaintiff was requesting a few days off per week (and if so, how many days and which days), a shortened work day (and if so, what hours she was proposing to work), time off solely for her weekly treatment (and if so, what day and time) or whether she was requesting to be absent from work without notice on any given day due to her health condition.

15.     Because plaintiff's job involves training other staff members and training schedules must be set up in advance, it was crucial that we be able to anticipate as much as possible when and with what frequency plaintiff anticipated being absent from work. If plaintiff intended her absences to be irregular, we needed to explore whether we should transfer her temporarily to another position, as permitted by the FMLA.

16.     Prior to submission of the Form, plaintiff had already been absent from work on March 10, 11 (half day) and 14, 2005. She was absent again on March 15, 16, 24, 25, 28, April 4 and 6, 2005  This time was treated as FMLA leave, and plaintiff was paid out her sick time and some of her vacation time during this period. At no time was plaintiff denied time off or even questioned about these absences. A copy of plaintiff's Attendance Calendar for 2005 is annexed hereto as Ex. E.

17.     By April 6, 2005, the Funds had still not received any clarification from plaintiff or her physician as to her schedule for intermittent FMLA leave. I met with plaintiff and explained that her leave had been conditionally approved. However, once again I requested clarification on the nature of her request. In a memorandum confirming our conversation that day, I explained that on the basis of her physician's letters, "it is difficult for us to determine your time off requirements." I stated further:

> As a final step in the FMLA approval process, we need
> clarification as to the work hour limitations of your
> situation. This is necessary so that we can determine our
> training coverage needs. As you know, we have a
> considerable amount of training scheduled this year. You
> are the sole technical trainer for many of these modules and
> the scheduling of time is critical to these on-going efforts."

A copy of my memorandum dated April 6, 2005, is annexed hereto as Ex. F.

18.     During the April 6, 2005 meeting with plaintiff, she asked me about the blind ad for the Technical Trainer and whether that position was intended as a replacement for her. I reminded plaintiff that she and Mr. Davies had pointed out that

they had no back up for training and that the Funds was seeking to hire an additional staff person solely as a trainer and not to replace her as Project Manager.  In fact, the Funds did not advertise for, interview for or hire a new Project Manager nor did the Funds ever have the intention of hiring a Project Manager to replace plaintiff.

19.    By letter dated April 11, 2005, plaintiff's physician, responding to the questions in my April 6 memorandum, stated that "at the present time, Ms. Lepore needs at least two days off from work every week, possibly more, depending on how she is feeling.  You would need to work out the actual schedule with her."  A copy of the letter dated April 11, 2005, is annexed hereto as Ex. G.

20.    On April 12, 2005, plaintiff's supervisor, Andrew Windsor, sent an e-mail to plaintiff asking her to come into the Funds office at 305 West 44th Street so that he could meet with her to discuss some training issues.  Plaintiff responded the following morning, stating that she was on intermittent FMLA leave, that she was not feeling well, that she would not be in the next day or "probably" the day after.  Copies of the e-mails dated April 12 and 13, 2005 are annexed hereto as Ex. H.

21.    At this point, although the Funds had granted plaintiff's intermittent FMLA leave and had repeatedly requested information about plaintiff's anticipated schedule, the Funds still had no idea when and how frequently plaintiff would be absent from work and did not know how to schedule the training sessions she was responsible for.

22.    On April 13, 2005, Mr. Windsor's Administrative Assistant telephoned plaintiff at the Queens Health Center in Long Island City and asked her to come into the Funds' Manhattan office to discuss her schedule with Mr. Windsor.  After asking if Mr. Windsor would pay for her parking and being told she should take the subway, plaintiff became extremely upset, had to leave work and sought emergency medical attention.

23.    Plaintiff was absent from work on April 14 and 15, 2005,  returned to work on April 18, 19 and 20, 2005, and then was out of work on full-time FMLA leave for twelve (12) weeks and one day, from April 21 through July 15, 2005.  See Ex. E.  A copy of plaintiff's disability form dated April 18, 2005 is annexed hereto as Ex. I.

24.    Plaintiff returned to work on July 18, 2005 and is currently working in her position as Project Manager, at the same rate of pay and benefits as prior to her FMLA leave.

25.    It is evident from the documentary evidence submitted herewith that the Funds promptly acknowledged plaintiff's request for FMLA leave, tried unsuccessfully to obtain clarification of her anticipated schedule for intermittent leave and never denied or obstructed plaintiff's right to take FMLA leave.  In fact,  it cannot be disputed that plaintiff took 10 full days and two half days of intermittent FMLA from March 9 through April 20, 2005, then took full-time FMLA leave from April 21 through July 15, 2005 (for a total of 72 days of leave) and was restored to her position on July 18, 2005.

26.    In addition, plaintiff's medical coverage was continued during her FMLA leave, as required by law.

**Conclusion**

27.    For all the foregoing reasons, the Funds submit that plaintiff's claim pursuant to FMLA as well as her pendant state claims should be dismissed in their entirety.

_____
WILLIAM TORRES

Sworn to before me this
____ day of August, 2005

_____
NOTARY PUBLIC

JUDITH A. STOLL
NOTARY PUBLIC, State of New York
No. 01ST4655884
Qualified in New York County
Commission Expires Dec. 31, 2005

## AFFIDAVIT OF SERVICE BY REGULAR MAIL

STATE OF NEW YORK    )
                             ) ss.:
COUNTY OF NEW YORK )

I, Cara M. Brownell, being duly sworn, say:

I am not a party to the within action, am over 18 years of age, and reside in Brooklyn, New York.

On August 22, 2005, I served the within:

### Notice of Motion to Dismiss with Supporting Affidavit

by delivering a true copy thereof, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following:

**TO:**    **Law offices of Ambrose W. Wotorson, P.C.**
           **26 Court Street, Suite 1811**
           **Brooklyn, New York  11242**

**CARA M. BROWNELL**

Sworn to before me this
22nd day of August, 2005

Notary Public

JUDITH A. STOLL
NOTARY PUBLIC, State of New York
No. 01ST4655884
Qualified in New York County
Commission Expires Dec. 31, ~~19~~ 2005

232989.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FLORA LEPORE

                    Plaintiff

  -Against-

NEW YORK HOTEL TRADES COUNCIL
EMPLOYEE BENEFITS FUNDS
                 Defendant
--------------------------------------------------------X

**COMPLAINT**
**JURY TRIAL DEMANDED**

    Plaintiff, FLORA LEPORE, by her attorneys, LAW OFFICES OF AMBROSE

WOTORSON, alleges as follows:

    I.    INTRODUCTION

    1.    This is an action pursuant to 29 U.S.C. 2601, et seq., Section 8-107(1)(a) of the

New York City Human Rights Law and Section 296 of the New York State Human Rights Law

to vindicate the civil and employment rights of Plaintiff. Plaintiff contends that defendant

willfully obstructed her rights to leave under the Family Medical Leave Act and altered the

terms, conditions, and privileges of her employment because of her gender, which is female.

Moreover, plaintiff contends that she was retaliated against because of her opposition to the

aforementioned discrimination. These misdeeds are ongoing in nature.

    II.    JURISDICTION

    2.    This Court has jurisdiction over this action under 29 U.S.C. Sections 2601, et seq.

Venue is proper, as the operative events occurred within this judicial district.

1

Exhibit A

III.    PARTIES

3.    FLORA LEPORE  (hereinafter, "plaintiff" or "Lepore") resides at 12 Ellwood

Avenue, Staten Island, New York 10314. She is currently employed with defendant as a project

manager. She brings this claim on her own behalf.

4.    NEW YORK HOTEL TRADES COUNCIL AND EMPLOYEE BENEFITS

FUNDS OF NEW YORK (hereinafter, "Defendant") is an employer for FMLA purposes. Indeed,

at all relevant times, defendant employed plaintiff as a project manager. Defendant does business

in New York at 305 West 44th Broadway, New York, New York 10036.

III    FACTUAL AVERMENTS

4.    Plaintiff's performance has been fully satisfactory at all relevant times.

5.    However, the terms, conditions, and privileges of plaintiff's employment have

been adversely affected in the following ways:

       a.    Plaintiff was hired on or about April 14, 2002 as a project

          manager.

       b.    At the time of her hire, plaintiff had started working on her

          Masters degree in health care administration. At the time, plaintiff

          was the only project manager employed with defendant who was in

          the process of obtaining a Master degree.

       c.    As well, at the time of her hire, plaintiff was the only female

          project manager employed with defendant.

       d.    Almost immediately upon her hire, plaintiff was subjected to

          disparate terms and conditions of her employment based, in part,

          upon her sex.

2

e.    For example, on or about October 2002,  Jordan Beasley, who has

the male Director of Provider Relations, summoned

plaintiff to show her a calendar which he called the

"crispy cream" calendar. The calendar depicted an obese woman,

scantily clad in a bikini eating a donut, while lounging in a pool.

Plaintiff nether welcomed nor solicited this, and promptly

told Beasley that she was not amused, as Beasley seemed to be

teasing plaintiff about her own weight.

f.    Within two weeks, Beasely recommended that plaintiff be

disciplined for breaching confidentiality when she overheard

another employer being discussed in a meeting and she simply

informed the employer that she had been a topic of conversation.

A warning memo was placed in plaintiff's personnel file as

punishment. On information and belief, such actions are rarely, if

ever, the basis for formal disciplinary actions against males.

g.    Moreover, in late 2003, all of the male project managers received

bonuses.

Plaintiff did not receive such a bonus, and she reasonably protested

the same to her boss, Andrew Windsor.

h.    Plaintiff was given utterly pretextual reasons as to why she

was not given a bonus. Indeed, plaintiff was told that because

the tone of one of her e-mails was too harsh, she was not entitled to

a bonus. On information belief, defendant's male project managers

3

have engaged in far worse conduct, with management's knowledge, yet they were given bonuses in 2003.

i. On or about May 2004, plaintiff's Process and Improvement manager ordered that plaintiff be excluded from all sensitive meetings. Although plaintiff was tasked with training the entire staff on how to use certain applications systems, she was neither copied on, nor informed about e-mails which related to her assigned tasks.

j. Moreover, defendant simply ceased to invite her to, or to inform her of, important staff meetings. As well, plaintiff, unlike the other male project managers, does not even have an office or a desk.

k. Simply stated, plaintiff has not been provided with the necessary tools and/or work space within which to succeed.

l. Defendant has failed to offer any reasonable and legitimate business justification for this disparity, and it is unexplainable without reference to plaintiff's sex.

m. Moreover, male employees who are new and who are junior to plaintiff, have automatically obtained necessary equipment to allow them to succeed. No such courtesies have been extended to plaintiff.

4

n.     Moreover, when plaintiff asked for a performance review in July 2004, her boss, Andrew Windsor, told her that he was "too busy." In fact, plaintiff has never received a performance evaluation, since she was hired in 2002.

o.     In January 2005, plaintiff was informed that the focus of her training would be changed. As a direct result of these changes, plaintiff now wanders from location to location. Unlike her male counterparts, plaintiff does not have a home base.

p.     As a result of all of the above, plaintiff is on the precipice of a nervous breakdown. Plaintiff has been diagnosed with a serious medical condition of severe depression and she has been prescribed a course of therapy.

q.     Defendant has been made aware of this.

r.     However, on or about March 9, 2005, plaintiff applied for leave under the FMLA because she was suffering from this severe depression.  In applying for FMLA leave, plaintiff submitted a written diagnoses from her health care providers.

s.     However, defendant refused to even acknowledge plaintiff's timely application for FMLA leave, thereby obstructing her right to leave under the FMLA. Indeed, there is no dispute that plaintiff worked 1250 hours in the 12 months prior to her application, and that she had been employed with defendant for more than two years at the time of her FMLA application.

5

t.   As a direct result of defendant's failure to even acknowledge plaintiff's timely FMLA application, plaintiff's mental health condition has worsened. Indeed, plaintiff has now been prescribed Lexapro for depression, and Adavan to assist her sleep.

u.   In fact, plaintiff has a history of clinical depression, such that she was placed on social security disability in July 2001.

v.   On information and belief, defendant has planned to illegally terminate plaintiff's employment. Indeed, on March 10, 2005, after plaintiff had applied for FMLA leave, defendant surreptitiously advertised a job opening for plaintiff's position on Monster.com.

6.   As a proximate result of defendants' arbitrary, retaliatory, discriminatory and illegal acts towards plaintiff, plaintiff will suffer a loss of earnings, bonuses and other employment benefits.

7.   As a further proximate result of defendants' arbitrary, retaliatory, discriminatory and illegal actions towards plaintiff, plaintiff has suffered impairment and damage to plaintiff's good name and reputation.

8.   As a further proximate result of defendants' arbitrary, retaliatory, discriminatory and illegal actions towards plaintiff, plaintiff has suffered extreme mental anguish and severe emotional injury.

9.   As a further proximate result of defendants' arbitrary, retaliatory, discriminatory and illegal actions towards plaintiff, plaintiff has been unable to ameliorate her employment situation.

6

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

10. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

11. The defendant violated 29 U.S.C. 2601, *et seq.*, by obstructing plaintiff's rights to leave and by failing to grant plaintiff a leave of absence for her serious medical condition. As well, defendant retaliated against plaintiff by refusing to acknowledge her timely application for leave, and by advertising her position on Monster.com. There misdeeds were willful, and they are ongoing in nature.

### SECOND CAUSE OF ACTION

12. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

13. The defendant violated Section 8-107(1)(a) of the New York City Human Rights Law and Section 296 of the New York Human Rights Law by varying the terms, conditions and privileges of plaintiff's employment on account of her gender, which is female. As well defendant retaliated against plaintiff because she opposed her discriminatory mistreatment.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant to her judgment containing the following relief:

    a. An award of damages to be determined at the time of trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury,

7

b.    An award of punitive and/or liquidated damages to be determined at the

time of trial as against any individual defendants;

c.    An award of reasonable attorney fees and the costs of this action and,

d.    Such other and further relief as this Court may deem just and proper; and

e.    reinstatement or any other equitable relief available, including an

injunction against the adverse actions complained of herein.

Dated: Brooklyn, New York
          June 28, 2005

Respectfully Submitted,
Law Offices of Ambrose Wotorson, P.C.

By_____
Ambrose W. Wotorson (AWW—2412)
26 Court Street
Suite 1811
Brooklyn, New York 11242

718-797-4861

8

**TECHNICAL TRAINER**

NYC based healthcare and benefits management organization has an immediate opening for a creative, flexible, technical trainer. In addition to planning, developing and delivering technical training programs, this position will involve the incumbent in a wide variety of organization-wide projects.

Qualified candidates must possess:

3 - 5 years prior technical training experience (healthcare industry experience is a plus)
Strong presentation and organizational skills
Excellent written and verbal communication skills
Ability to interact with all levels in a professional manner
Ability to work independently
Strong PC skills
College degree or equivalent business experience

Only qualified, local candidates will be contacted. For immediate consideration, please send your resume including salary requirements to: Box T8396

**Placed with NY Times**

**Date:  03-24-05**

**Edition: 03-27-05**

**Requested by: B. Torres**

**Justification:   recruitment**

**Cost:  $1712.00**

Exhibit B



THE NEW YORK HOTEL TRADES COUNCIL

# EMPLOYEE BENEFIT FUNDS

THE HOTEL ASSOCIATION OF NEW YORK CITY, INC.

## EMPLOYEE FMLA REQUEST

If the need for an FMLA leave is foreseeable, you are required to request the leave 30 days in advance. Examples of foreseeable events include planned medical treatment or your child's birth. For unforeseen events, such as a premature birth or a sudden change in your health creating a serious health condition, you are required to request the leave as soon as possible and practical to do so.

Name: _FLORA M LEPORE_ SSN: _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_

Department: _Projects_ Date of Hire _April 18, 2002_
_Administrative Services_

Home Address: _12 Elwood Avenue_ Home Phone: _718-698-6523_
_Staten Island, NY. 10314_

**Reason for Leave: (Check the appropriate box)**

☐ Birth of a child, adoption or foster-care placement of a child;

☐ Care of a child, spouse/registered domestic partner or parent with a serious health condition;

☑ Attending to the employee's own serious health condition. (A serious health condition involves an illness, injury, impairment or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility or continuing treatment by a health care provider).

**Type of Leave Requested:**

☐ Consecutive   Start Date: _____ End Date _____

☑ Intermittent   Start Date: _3/10/2005_

☐ Reduced Hours   Schedule: _____

**Have you taken leave under the FMLA policy during the last 12 months?**

☒ No

☐ Yes   From: _____ to _____

_Flora McLepae_   _March 9, 2005_
Employee Signature                                Date

**For H. R. use:**

☐ Approved; subject to receipt of Medical Certification Form, if required for this leave

☐ Not Approved: _____

_____   _____
H.R. Signature                              Date

Exhibit C

# Family and Medical Leave Act of 1993
## CERTIFICATION OF HEALTH CARE PROVIDER

| | | |
|---|---|---|
| 1. | Employee's Name: | *FLORA M LEPORE* |
| 2. | Patient's Name (if different from employee): | *SAME* |

3. The attached sheet describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act.  Check the appropriate category under which the patient's condition[1] qualifies:
   (1)____ (2)____ (3)____ (4)_✓_ (5)____ (6)____ none of the above____

4. Describe the **medical facts** that support your certification, including a brief statement as to how the medical facts meet the criteria checked above: *Patient is severely depressed, has poor concentration; ↓ sleep; ↑ appetite; tearfulness, feeling hopeless and worthless.*

5. a) State the approximate **date** the condition commenced and the probable duration of the condition (state the probable duration of the patient's present **incapacity**[2] if different):
   *Condition commenced around December 1; ↑ed in severity 2/10/05; duration about 3 months*

   b. Will it be necessary for the employee to work only **intermittently or to work on a less than full schedule** as a result of the condition (including the treatment described in #6 below)?
   ☑ yes  ☐ no
   If yes, give the probable duration:

   c. If the condition is a **chronic condition** (#4 under section III) or **pregnancy**, state whether the patient is presently **incapacitated**[2] and the likely duration and frequency of **episodes of incapacity**[2]:
   *Patient is presently has difficulty working*

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments: *20 visits*

   b. If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery, if any:
   *Pt will be seen on a weekly basis for treatment*

   c. If any of these treatments will be provided by **another provider or health service** (e.g., physical therapist) please state the nature of the treatments:
   *Yes, patient follows up with a therapist, Dr. Barbara Trilling*

   d. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment) *psychopharmacology with antidepressants and individual psychotherapy c̄ Dr. Trilling*

[1]Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.
[2]Incapacity for purposes of FMLA means the inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment for, or recovery from.

1 of 3

Revised 5/03

7.  a.  If a medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition) is the employee **unable to perform work** of any kind?  ☐ yes  ☒ no

b.  If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employer or employee should supply you with information about the essential job functions)?  ☐ yes  ☒ no
If yes, please list the essential job functions the employee is unable to perform:

c.  If neither of the above applies, is it necessary for the employee to be **absent from work for treatment?**
☒ yes  ☐ no

8.  a.  If leave is required for **care for an employee's family member** with a serious health condition, **does the patient require assistance** for basic medical or personal needs, safety or for transportation?
☐ yes  ☐ no

b.  If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?  ☐ yes  ☐ no

c.  If the patient will need care only **intermittently** or on a part-time basis, indicate the probable **duration** of this need:

---

Signature of Health Care Provider _NY License # 179949_   Type of Practice _PSYCHIATRY_
_Dr. Avila_
Address _2291 Victory Blvd_   Telephone Number _718 477-2184_
City, State, Zip Code _Staten Island, NY 10314_   Date _3/10/05_

**TO BE COMPLETED BY EMPLOYEE NEEDING FAMILY LEAVE TO CARE FOR A FAMILY MEMBER**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Signature _____   Date _____

Revised 5/03                    2 of 3

## *SERIOUS HEALTH CONDITION*

A "Serious Health Condition" means an illness, injury, impairment or physical or mental condition that involves one of the following:

1. **Hospital Care**
   inpatient care (i.e., an overnight stay) in a hospital, hospice or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care

2. **Absence Plus Treatment**
   a period of incapacity[2] of more than three consecutive calendar days (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:
   (a) treatment[3] two or more times by a health care provider, by a nurse of physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
   (b) treatment by a health care provider on at least one occasion that results in a regimen of continuing treatment[4] under the supervision of the health care provider

3. **Pregnancy**
   any period of incapacity[2] due to pregnancy, or for prenatal care

4. **Chronic Conditions Requiring Treatments**
   a chronic condition that:
   (a) requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider
   (b) continues over an extended period of time (including recurring episodes of a single underlying condition); and
   (c) may cause episodic rather than a continuing period of incapacity2 (e.g., asthma, diabetes, epilepsy, etc.)

5. **Permanent/Long-term Conditions Requiring Supervision**
   a period of incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective; the employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider (e.g., Alzheimer's, a severe stroke or the terminal stages of a disease)

6. **Multiple Treatments (Non-Chronic Conditions)**
   any period of absence to receive multiple treatments (including any period of recovery from) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis)

---

[2]incapacity for purposes of FMLA means the inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment for, or recovery from

[3]treatment includes examinations to determine if a serious health condition exists and evaluations of the condition; treatment does not include routine physical examinations, eye examinations or dental examinations

[4]a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition; a regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines or salves; or bed-rest, drinking fluids, exercise and other similar activities that can be initiated without a visit to a health care provider

Revised 5/03

**BARBARA TRILLING, Ph.D.**
Certified Psychologist
1625 Victory Boulevard
Staten Island, NY 10314
718-447-7079

March 21, 2005

Fax to: Mr. William Torres
Director of Human Services
The New York Hotel Trades Council and Employee Benefit Fund
212-397-7351

CONFIDENTIAL                           Re: Ms. Flora Lepore

Dear Mr. Torres:

I concur with Dr. Avila that Ms. Flora Lepore is suffering from depression and needs an intermittent leave from work.

An essential part of the treatment plan is to reduce stress, and working full time is too stressful for Ms. Lepore at the present time. Also, Ms. Lepore's medication is being adjusted, and until she is stabilized on medication, a flexible work schedule is necessary.

I will be seeing Ms. Lepore in weekly psychotherapy sessions.

Sincerely,

*Barbara Trilling*

Barbara Trilling, Ph.D.

Exhibit D

2005 ATTENDANCE CALENDAR

TITLE/POSITION _ PROJECT MANAGER 11    HIRE DATE _

VACATION HRS _140    SICK HRS _49    PERSONAL HRS _21    BIRTHDATE - 4/15/0?

TELEPHONE _

EMPLOYEE NAME
FILE # _

Lepore,    Flora    Location CA
LAST    FIRST    LOCATION _

ABSENCE CODES

Exhibit E



THE NEW YORK HOTEL TRADES COUNCIL
# EMPLOYEE BENEFIT FUNDS
THE HOTEL ASSOCIATION OF NEW YORK CITY, INC.

# MEMORANDUM

**TO:** Flora Lepore
**FROM:** Bill Torres
**DATE:** April 6, 2005
**RE:** FMLA Request

We have conditionally approved your FMLA request. This approval is conditioned on our receiving additional information to clarify the nature of the request. Your healthcare provider has not been specific about the amount of FMLA related time off that is being requested. In the letter we received from your provider, she stated, "…working full time is too stressful for Ms. Lepore at the present time." She later stated, "…a flexible work schedule is necessary." She also mentioned that she would be seeing you once a week. From your provider's letter, it is difficult to determine whether your FMLA request is for work on a part time basis for intermittent time off from work based on how you might be feeling or time off on a weekly basis for treatment. As a result, it is difficult for us to determine your time off requirements.

As a final step in the FMLA approval process, we need clarification as to the work hour limitations of your situation. This is necessary so that we can determine our training coverage needs. As you know, we have a considerable amount of training scheduled this year. You are the sole technical trainer for many of these modules and the scheduling of time is critical to these on-going efforts.

Please have your healthcare provider send the additional information we are requesting. Once we have this information, we will be able to give the final approval for a maximum of 12 workweeks (or 60 days) of FMLA leave.

Exhibit F

**BARBARA TRILLING, Ph.D.**
Certified Psychologist
1625 Victory Boulevard
Staten Island, NY   10314
718-447-7079

April 11, 2005

Fax to:  Mr. William Torres
          Director of Human Services
          The New York Hotel Trades Council and Employees Benefit Fund
          212-397-7351

CONFIDENTIAL

                                        Re:  Ms. Flora Lepore
                                             FMLA Request

Dear Mr. Torres:

    In your memorandum to Ms. Lepore dated April 6, 2005, you requested more specific information from me.

    At the present time, Ms. Lepore needs at least two days off from work every week, possibly more, depending on how she is feeling.  You would need to work out the actual schedule with her.

                                        Sincerely,

                                        *Barbara Trilling, Ph.D.*

                                        Barbara Trilling, Ph.D.

                                        Exhibit G

## Lepore, Flora

| | |
|---|---|
| **From:** | Lepore, Flora |
| **Sent:** | Wednesday, April 13, 2005 9:00 AM |
| **To:** | Windsor, Andrew |
| **Cc:** | Torres, William |
| **Subject:** | RE: Meeting |

Andrew:

I'm on a conditional intermittent leave. I already cancelled one doctor appt. so that I could be here with Bani this morning. I am not feeling well and cannot cancel my other doctor appt. at 2:30 in Staten Island.

I will not be in tommorrow and depending how I feel, will probably not be in on Friday.

Please send me an e-mail with an agenda/issues and perhaps I can address them for you in this forum.

Thank you for your consideration.

Flora

-----Original Message-----
| | |
|---|---|
| **From:** | Windsor, Andrew |
| **Sent:** | Tuesday, April 12, 2005 5:06 PM |
| **To:** | Lepore, Flora |
| **Subject:** | Meeting |

Flora,

I know that you're scheduled to be out in Queens on the morning of Wed., 4/13.  If you could come to 305, I'd like to meet with you to discuss some training issues.  Please let me know if you're in the building.  Thanks.

**Andrew Windsor**
**Director, Administrative Services**

New York Hotel Trades Council &
Hotel Association of New York City, Inc.
Health Benefits Fund
212-586-6400 ext. 4304
<http://www.hotelfunds.org/>

**Confidentiality Notice:**  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

| Tracking: | Recipient | Delivery | Read |
|---|---|---|---|
| | Windsor, Andrew | Delivered: 4/13/2005 9:00 AM | Read: 4/13/2005 9:09 AM |
| | Torres, William | Delivered: 4/13/2005 9:00 AM | |
| | Davies, Frank | Delivered: 4/13/2005 9:00 AM | Read: 4/14/2005 8:37 AM |
| | Ingraham, Carl | Delivered: 4/13/2005 9:00 AM | Read: 4/13/2005 9:22 AM |

Exhibit H

1

# NOTICE AND PROOF OF CLAIM FOR DISABILITY BENEFITS
**CLAIMANT: READ THE FOLLOWING INSTRUCTIONS CAREFULLY**

1. USE THIS FORM ONLY IF YOU BECOME SICK OR DISABLED WHILE EMPLOYED OR IF YOU BECOME SICK OR DISABLED WITHIN FOUR (4) WEEKS AFTER TERMINATION OF EMPLOYMENT. USE GREEN CLAIM FORM DB-300 IF YOU BECOME SICK OR DISABLED AFTER HAVING BEEN UNEMPLOYED MORE THAN FOUR (4) WEEKS.
2. YOU MUST COMPLETE ALL ITEMS OF PART A - THE "CLAIMANT'S STATEMENT". BE ACCURATE. CHECK ALL DATES.
3. BE SURE TO DATE AND SIGN YOUR CLAIM (SEE ITEM 12). IF YOU CANNOT SIGN THIS CLAIM FORM, YOUR REPRESENTATIVE MAY SIGN IN YOUR BEHALF. IN THAT EVENT, THE NAME, ADDRESS, AND REPRESENTATIVE'S RELATIONSHIP TO YOU SHOULD BE NOTED UNDER THE SIGNATURE.
4. DO NOT MAIL THIS CLAIM UNLESS YOUR DOCTOR COMPLETES AND SIGNS PART B – THE "DOCTOR'S STATEMENT".
5. YOUR COMPLETED CLAIM SHOULD BE MAILED WITHIN THIRTY (30) DAYS AFTER YOU BECOME SICK OR DISABLED TO YOUR LAST EMPLOYER OR YOUR LAST EMPLOYER'S INSURANCE COMPANY.
6. MAKE A COPY OF THIS COMPLETED FORM FOR YOUR RECORDS BEFORE YOU SUBMIT IT.

## PART A — CLAIMANT'S STATEMENT (Please Print or Type) ANSWER ALL QUESTIONS

1. My name is FLORA M LEPORE
2. My Social Security Number is: 132 54 2079
3. Address 12 ELWOOD Avenue S.I.N.Y. 10314

Tel. No 718-698-7521  4. My age is 47  5. Married (check one) NO
6. My disability is (if injury, also state how, when, and where, it occurred) Mental stress depression - loss of Focus inability to concentrate April 18, 2005
7. I became disabled on April 18, 2005  a. I worked on that day NO
b. I have since worked for wages or profit YES  If "Yes", give dates 4.19, 4/20

8. Employer's Business Name NYHTC  Business Address 305 West 44th Street  Telephone No. 212-586-6400  From 4/15/2002  Through present  Average Weekly Wages $1322.00

9. My job is or was Project Manager  Name of Union N/A
10. For the period of disability covered by this claim
   a. Are you receiving wages, salary or separation pay: NO
   b. Are you receiving or claiming:
      (1) Workers' Compensation NO
      (2) Damages for personal injury NO
      (3) Unemployment Insurance Benefits YES
      (4) Disability Benefits under the Federal Social Security Act NO

12. Claim signed on April 18, 2005  Claimant's Signature Flora M Lepore

DOCTOR MUST COMPLETE PART B ON REVERSE SIDE

Exhibit I

**IMPORTANT: USE THIS FORM ONLY WHEN THE CLAIMANT BECOMES SICK OR DISABLED WHILE EMPLOYED OR BECOMES SICK OR DISABLED WITHIN FOUR (4) WEEKS AFTER TERMINATION OF EMPLOYMENT. OTHERWISE USE GREEN CLAIM FORM DB-300.**

## PART B — DOCTOR'S STATEMENT (Please Print or Type)

THE DOCTOR'S STATEMENT MUST BE FILLED IN COMPLETELY AND THE FORM MAILED TO THE INSURANCE CARRIER OR SELF-INSURED EMPLOYER, OR RETURNED TO THE CLAIMANT WITHIN SEVEN DAYS OF THE RECEIPT OF THE FORM. For item 7-d, give approximate date, Make some estimate. If disability is caused by or arising in connection with pregnancy, enter estimated delivery date under "Remarks".

1. Claimant's Name    _FLORA    M    LEPORE_    2. Age _49_

               First         Middle         Last

3. ☐ Male  ☒ Female

4. Diagnosis/Analysis: _Major Depression Single c Psychotic features_

  a. Claimant's Symptoms: _tearfulness, helplessness, hopelessness_
    _paranoid ideations, poor sleep, ↑ appetite,_

  b. Objective Findings: _depressed mood, despondent affect,_
    _paranoid ideations_

5. Claimant Hospitalized?    YES ☐   NO ☑    From .................... To ....................

6. Operation Indicated?    YES ☐   NO ☑    a. Type .................... b. Date ....................

7. Enter Dates for the Following:

| | | Mo. | Day | Year |
|---|---|---|---|---|
| a. Date of your first treatment for this disability | a. | 01 | 26 | 2000 |
| b. Date of your most recent treatment for this disability | b. | 04 | 17 | 2005 |
| c. Date Claimant was unable to work because of this disability | c. | 04 | 18 | 2005 |
| d. Date Claimant will be able to perform usual work | d. | 07 | 14 | 2005 |

(Even if considerable question exists, estimate date. Avoid use of terms such as unknown or undetermined.)

8. In your opinion, is this disability the result of injury arising out of and in the course of employment or occupational disease?    YES ☐   NO ☑

If yes, has Form C-4/48 been filed with the Workers' Compensation Board?    YES ☐   NO ☐

Remarks (Attach additional sheet, if necessary): ....................

9. I affirm that I am a _PHYSICIAN_    Licensed in the State of _New York_    License No. _179949_
          (Physician, Podiatrist, Chiropractor, Dentist)

Doctor's Signature _L. Avila MD_    Date _4/25/05_

Doctor's Name (Please Print) _LORNA A AVILA MD_    Tel. No. _(718) 477-2182_

Office Address _201    BRYSON    AVENUE    STATEN ISLAND    NY    10314_
          Number        Street        City or Town      State      Zip Code

MAIL TO:

THE NEW YORK HOTEL TRADES COUNCIL AND
HOTEL ASSOCIATION OF NEW YORK CITY, INC.
HEALTH BENEFITS FUND
305 WEST 44th STREET, NEW YORK, NEW YORK 10036

_Return Karen Hargrove_
_TAX ID 13-1595091_

THE WORKERS' COMPENSATION BOARD EMPLOYS AND SERVES THE HANDICAPPED WITHOUT DISCRIMINATION.

 

**The STANDARD**
**LIFE INSURANCE**
**COMPANY OF NEW YORK**

**New York State Disability Claim**
**Employer's Statement**

The Standard Life Insurance Company of New York
PO Box 5031  White Plains NY 10602-5031  800.426.4332 Tel  800.578.8561 Fax

## PART C – EMPLOYER'S STATEMENT (Please Print or Type)

| Employee's Full Name: | Social Security No.: | Job Title: *(Please attach a copy of the job description.)* | |
|---|---|---|---|
| FLORA M. LEPORE | 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 | Project MANAGER | |

Hotel Name and Tax ID No.: *(for industry groups only)*

1. Date Employed: 4/15/2002

2. Is employee insured for Statutory Disability benefits? ☑Yes ☐No
effective date: _____
Is employee insured for Short Term Disability benefits? ☑Yes ☐No
effective date: _____

3. Is disability work related? ☐Yes ☑No ☐Undetermined

4. Has the employee filed for: Workers' Compensation: ☐Yes ☐No
Other: _____ ☐Yes ☐No
Weekly Amount: _____

5. Employee's earnings: 1356.84
Please attach earnings for 8 weeks prior to Disability

7. Job status when disability began:
☑Full-time _72_ hours/week
☐Part-time ( ___ hours/week)

6. Last active day at work: 4/20/05 (See DB450)

8. Date employee returned to work: See DB450

9. Are wages being continued during disability? ☐Yes ☑No
If "Yes", does the employer request reimbursement? ☐Yes ☐No

10. Through what date are wages being continued? _____

11. Is employee subject to:
Social security taxes? ☑Yes ☐No
Medicare taxes? ☑Yes ☐No

12. What percentage of the Statutory Disability premium does the employer pay? _100_ %
What percentage of the Short Term Disability premium does the employer pay? _100_ %
Has the percentage changed within the last three years for any of these coverages? ☐Yes ☐No
If Yes, please identify the affected coverages and the effective date(s) of changes.

Employer and Policy No.:
**Staff - The New York Hotel Trades Council and Affiliated Locals Staff Insurance Fund - Policy No. 642911**

| Address: | | | |
|---|---|---|---|
| 305 West 44th Street | | | Phone No.: |
| City: New York | State: NY | Zip Code: 10036 | ( 212 ) 586-6400 |

Employer Contact:
**Industry Claims - Arzlen Beaver, Staff Claims - Karen Hargrove**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Signature: *Karen Hargrove*          Date: 4/28/05