UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FLORA LEPORE,

       Plaintiff,    05 Civ. 6165 (HB)

   - against-    **OPINION & ORDER**

NEW YORK HOTEL TRADES COUNCIL,
EMPLOYER BENEFIT FUNDS,

       Defendant.
------------------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

  Plaintiff, Flora Lepore, brings claims against her employer, New York Hotel Trades Council and Employee Benefit Funds of New York (the "Funds"), under the Family and Medical Leave Act, 29 U.S.C. Section 2601 et seq. (the "FMLA" or "the Act"); Section 8-107(1)(a) of the New York City Human Rights Law; and Section 296 of the New York State Human Rights Law. She seeks damages in compensation for mental anguish, humiliation, embarrassment, and emotional injury; equitable relief,[1] including an injunction against the adverse actions complained of; reasonable attorney fees and costs; and such other relief as the Court deems proper.[2] The Funds moves to dismiss Lepore's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim. As explained below, the Court treats the 12(b)(6) motion as a partial motion for summary judgment. For the following reasons, the Funds' motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

  The Funds hired Lepore on or about April 14, 2002, as a Project Manager responsible

---

[1] As part of her prayer for equitable relief, Lepore asks for reinstatement. As Lepore is still employed by the Funds in the same position and with the same rate of pay and benefits as prior to the events complained of in this lawsuit, however, this form of relief appears to be moot.

[2] Lepore also asks for punitive or liquidated damages against "any individual defendants." Lepore has not brought suit against individual defendants, however, only against the Funds.

for training its staff to use certain computer systems. (Compl. ¶¶ 5(a) & (i)). Between March 9 and March 19, 2005—depending on which affidavit one believes—Lepore applied for intermittent leave under the FMLA because she suffered from severe depression.[3] (Compl. ¶ 5(r)); see 08/22/05 Affidavit of William Torres, the Funds' Director of Human Resources, in Supp. of Mot. to Dismiss ("Torres Aff.") ¶ 11; 09/12/05 Affidavit of Flora Lepore in Opp'n to Mot. to Dismiss ("Lepore Aff.") ¶ 5; Employee FMLA Request, Ex. 1 to 09/12/05 Affirmation of Ambrose Wotorson, counsel for Lepore ("Wotorson Aff."); 04/18/05 e-mail from Lepore to Torres, Ex. 12 to Wotorson Aff. On March 10, 2005, Lepore saw a listing on Monster.com stating that a "NYC based healthcare and benefit management organization" had an immediate opening for a technical trainer. Monster.com Listing, Ex. 20 to Wotorson Aff.

A certification provided by Lepore's physician, Dr. Lorna Avila, indicated that Lepore's ailment qualified as a "serious health condition" under the Act, that Lepore was able to perform the essential functions of her job, but that she had to be absent from work for treatment. See Employee FMLA Request, Ex. 1 to Wotorson Aff. Dr. Avila also noted that Dr. Barbara Trilling, a therapist, would treat Lepore on a weekly basis for about twenty visits. See id.

William Torres, the Funds' Director of Human Resources, informed Lepore in a memorandum dated April 6, 2005 that the Funds had conditionally approved her FMLA leave request, and would grant final approval when her physician clarified her anticipated leave schedule. See Torres Memorandum, Ex. 6 to Wotorson Aff. On April 11, 2005, Dr. Trilling faxed Torres that Lepore would need at least two days off a week—any two days would suffice—and that Torres and Lepore would need to work out an actual schedule. See Trilling Letter, Ex. 8 to Wotorson Aff.

Lepore was intermittently absent from work for about ten days between March 10, 2005 and April 15, 2005. See Lepore Attendance Calendar, Ex. E to Torres Aff. The Funds

---

[3] In her Complaint, Lepore states that she applied for leave on or about March 9, 2005, which is also the date on the leave request form. William Torres, the Funds' Director of Human Resources, states however, that Lepore submitted her leave request on or about March 14, 2005. In her April 18, 2005 e-mail to Torres, Lepore writes that her sister delivered her FMLA application to the Funds on March 14, 2005. In her affidavit, however, Lepore claims that she applied for leave on March 19, 2005.

assigned the absence codes "sick" or "vacation" to these days. See id. On or about April 18, 2005, Lepore filed a claim with Standard Life Insurance Company of New York for disability benefits for "mental stress" and "depression." See Lepore Aff. ¶ 17; Disability Claim Form, Ex. 11 to Wotorson Aff. Lepore took time off work pursuant to her disability plan from April 25, 2005 to June 18, 2005. See Lepore Aff. ¶ 17. Lepore was also away from work from June 20, 2005 until July 16, 2005. See Lepore Attendance Calendar, Ex. E to Torres Aff. The Funds designated the majority of this time "vacation." See id.

Lepore returned to work on July 18, 2005 and is currently working in her former position, at the same rate of pay and with the same benefits as prior to her absence. See Torres Aff. ¶ 24. On July 22, 2005, Andrew Windsor, Lepore's supervisor, provided a performance evaluation for the period June 1, 2004 to June 1, 2005. See Performance Evaluation, Ex. 19 to Wotorson Aff. Windsor noted that Lepore had met or exceeded expectations in all performance factors except for communication and interpersonal skills where she only sometimes met expectations. See id. at 2-3. He also noted that Lepore sometimes spoke "in an abrupt and less than appropriate manner" and that she should cultivate "[a] more positive attitude towards her superiors and co-workers." Id. at 4. In early August 2005, Lepore sought to take another leave.[4] See Lepore Aff. ¶ 20. Windsor informed her that she had exhausted her available leave and would be subject to disciplinary measures if she took any additional leave. See id.

## II. DISCUSSION

**A.** **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." A district court may convert a Rule 12(b)(6) motion into a motion for summary judgment without express notice to the parties. See In re G. & A. Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985). The "essential inquiry" is whether the parties "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment" or instead were "taken by surprise and deprived of a reasonable opportunity to meet the facts outside the pleadings." Id. Where both parties submit affidavits and exhibits in support of their positions, as they did here in relation to Lepore's FMLA claims, a court may

---

[4] Lepore does not specify whether her August leave request was for FMLA leave.

fairly convert a Rule 12(b)(6) motion into one for summary judgment. See id.; see also Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993) (finding no error in district court's conversion of a Rule 12(b)(6) motion to one for summary judgment where plaintiff submitted materials extraneous to the pleadings).

A court will not grant a motion for summary judgment unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities, and draw all inferences, against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

**B.  The FMLA Claims**

**1.  Rights Under the FMLA**

The FMLA entitles eligible employees to twelve workweeks of leave during a twelve month period for, among other reasons, "a serious health condition." 29 U.S.C. § 2612(a)(1)(D) (1999). The employer must maintain coverage under a group health plan for employees who take FMLA leave. See 29 U.S.C. § 2614(c)(1) (1999). The employer must also restore employees who take FMLA leave to the positions they held when the leave commenced. See 29 U.S.C. § 2614(a) (1999).

It is unlawful for an employer to interfere with the exercise or attempted exercise of any rights provided under the Act. See 29 U.S.C. § 2615(a)(1) (1999). It goes without saying that employers may not retaliate against any individual should he or she "oppose any practice made unlawful" by the Act. 29 U.S.C. § 2615(a)(2) (1999).

**2.  Interference with Exercise of FMLA Rights**

Two elements that a plaintiff must establish to make out a prima facie case of interference with FMLA rights, and which are of concern here, are (i) that she gave notice to the defendant of her intention to take leave; and (ii) that she was denied benefits to which she was entitled under the Act. See Geromanos v. Columbia Univ., 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004). The parties disagree as to whether these two elements are satisfied here.

a.  Adequacy of Notice and Failure to Timely Acknowledge Application

Lepore claims that the Funds interfered with her exercise of FMLA rights by failing

4

to timely acknowledge her March leave application. See 09/12/05 Pl. Mem. of Law in Opp'n to Mot. to Dismiss the Compl. ("Pl. Mem.") at 8-9. The Funds responds that Lepore's notice was inadequate because she failed to specify a schedule for her absences. See 08/22/05 Def.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def. Mem.") at 10. In support of its position, the Funds cites two subparts of a regulation issued by the Secretary of Labor.[5] The first is at 29 C.F.R. Section 825.302(c) and requires employees who wish to take FMLA leave to provide at least verbal notice to their employer of the "anticipated timing and duration of the leave." Id. (2005). The second, at 29 C.F.R. Section 825.302(f), requires that at the employer's request, employees who wish to take intermittent FMLA leave for medical reasons should advise the employer of the schedule for treatment and attempt to work out with the employer a mutually agreeable leave schedule. See id. (2005).

The notice required of employees under 29 C.F.R. Section 825.302(c) is that "sufficient to make the employer aware that the employee needs FMLA-qualifying leave." Id. (2005). The employee "need not expressly assert rights under the FMLA or even mention the FMLA." Id. (2005). Here, Lepore used the Funds' standard "Employee FMLA Request" form to request leave, and submitted Dr. Avila's certification confirming that Lepore suffered from "a serious health condition" as defined by the Act and estimating that Lepore would see Dr. Trilling weekly for twenty visits. This information was sufficient to put the Funds on notice that Lepore needed FMLA-qualifying leave and of the anticipated timing and duration of the leave.

Under 29 C.F.R. Section 825.302(c), once employees give their employer notice that they require FMLA leave, it is the employer's responsibility to "inquire further of the employee . . . and obtain the necessary details of the leave to be taken." Id. (2005). Similarly, 29 C.F.R. Section 825.302(f) requires employees to provide a schedule for treatment only "upon request" of the employer. Id. (2005).

The parties disagree as to whether the Funds timely acknowledged Lepore's leave request by initiating the necessary inquiry as to a schedule. The Funds maintains that on March 17, 2005, three days after it received Lepore's leave application, Torres asked Lepore for clarification from her physician about the times she would be absent from work. See

---

[5] 29 U.S.C. Section 2654 directs the Secretary of Labor to "prescribe such regulations as are necessary to carry out subchapter I" of the FMLA. Id. (1999).

5

Torres Aff. ¶ 12. Lepore insists that the Funds did not acknowledge receipt of her application until April 7, 2005, when Torres handed her the memorandum approving her request on condition that her physician clarify her anticipated leave schedule. See Lepore Aff. ¶¶ 10-11. Further, Lepore avers that after Dr. Trilling faxed the requested clarification to Torres on April 11, 2005, she was never told that the information was insufficient. See Lepore Aff. ¶ 12. These issues of material fact preclude summary judgment on the issue of timely notice.

        b.        Denial of FMLA Benefits

Next, Lepore claims that she was denied FMLA benefits because the Funds failed to designate her absences as FMLA leave. See Pl. Mem. at 9-10. The Funds asserts that its failure to designate Lepore's leave as "FMLA" is immaterial for two reasons. First, the Funds claims that its FMLA leave policy, published in its Employee Handbook, allows it to charge Lepore's accrued paid leave against her unpaid FMLA leave, and to count Lepore's entire leave, including the period she received disability benefits, towards her annual twelve-week FMLA entitlement. See 09/26/05 Def. Mem. of Law in Further Supp. of Mot. to Dismiss ("Def. Reply") at 3. Second, the Funds contends that Lepore received her substantive FMLA rights because she took more than twelve weeks of leave during which the Funds maintained her medical coverage, and after which the Funds restored her to her former employment position. See Def. Mem. at 11.

In support of its first argument, the Funds cites to 29 C.F.R. Section 825.207. Subsection (a) of this regulation provides that "under the circumstances described in this section . . . the employer may require the employee to substitute accrued paid leave for FMLA leave." 29 C.F.R. § 825.207(a) (2005); see Def. Reply at 3. The Funds' published FMLA policy based on this provision is, however, less than crystal clear. While the third paragraph of the policy states that employees are "required to use all accrued, unused vacation, sick and personal days during the leave period," this paragraph relates only to employees who request leave to care for a child, spouse, or parent with a serious health condition. FMLA Policy, Ex. A to 09/26/05 Affidavit of William Torres in Further Supp. of Mot. to Dismiss. The fourth paragraph goes on to say "[a]n employee requesting FMLA leave for an approved short-term disability reason does not have to use their accrued, unused vacation, sick and personal days during the FMLA leave period." Id. (emphasis added). This statement appears to unequivocally except employees who take FMLA leave for approved short-term disability

6

from having to use their accrued paid leave during the FMLA leave period. A jury could reasonably find that Lepore's severe depression qualifies as an approved short-term disability, and that, under the wording of its FMLA policy, the Funds improperly charged her accrued paid leave against her FMLA leave. Accordingly, here too summary judgment based on the Funds' position that it acted consistently with its published FMLA policy is denied.

The Funds also cites to 29 C.F.R. Section 825.207 for the proposition that FMLA leave may run concurrently with disability leave. See Def. Reply at 3. Because the Funds does not point to a subsection of this regulation, I assume that it refers to subsection (d)(1) that states that an employer may count leave taken pursuant to a temporary disability benefit plan as running concurrently with FMLA leave. This subsection is directed, however, to disability leave for the birth of a child, and this specificity raises the question whether its provisions apply to temporary disability leave in general. See 29 C.F.R. § 825.207 (d)(1) (2005). Although I see no reason to draw a distinction based on the reasons for taking temporary disability leave, it is not necessary to resolve this question on the present motion, because the Funds designated only eight weeks of Lepore's leave as "disability." Assuming that this disability leave runs concurrently with leave under the Act, that still leaves four weeks of FMLA leave to which Lepore is entitled.

Notwithstanding its arguments in relation to 29 C.F.R. Section 825.207, the Funds asserts that it is Lepore's failure to show that she was denied benefits to which she was entitled under the Act that is truly dispositive. See Def. Mem. at 11. The Funds cites Sarno v. Douglas Elliman-Gibbons & Ives, Inc. in support of its argument that its failure to designate Lepore's leave as "FMLA" is inconsequential because this did not affect Lepore's substantive rights under the Act. Id., 183 F.3d 155 (2d Cir. 1999). In Sarno, the Second Circuit held that the FMLA does not give an employee "a right to sue the employer for failing to give notice of the terms of the Act where the lack of notice had no effect on the employee's exercise of . . . any substantive right conferred by the Act." Id. at 162. It is a different story where, as here, an employee's exercise of substantive FMLA rights may be affected by lack of notice, such as when the employee is able to perform her job functions and seeks FMLA leave for anticipated medical treatment. See Donnellan v. New York City Transit Auth., No. 98 Civ. 1096, 1999 WL 527901, at *4 n.10 (S.D.N.Y. July 22, 1999). In such circumstances, if the employee had known that her leave was designated as FMLA leave, she may have been able to schedule

treatments to coincide with work holidays or take intermittent leave so as to extend her twelve-week allotment over a longer period. See id.; Sims v. Schultz, 305 F. Supp. 2d 838, 845 (N.D. Ill. 2004). Here, Lepore did apply for intermittent leave and Dr. Avila certified that she was able to perform the essential functions of her job. The Funds produced no evidence that Lepore subsequently became unable to perform her job. Hence, there are issues of fact that Lepore may have been prejudiced by the Funds' failure to properly designate her leave.

### 3. **Retaliation**

Lepore claims that the Funds retaliated against her for exercising FMLA rights by (i) advertising her position on Monster.com; (ii) making negative comments in her performance evaluation; and (iii) informing her that she had no more leave and would be subject to disciplinary measures if she took more time off. (Compl. ¶ 11); see Pl. Mem. at 10.

The Second Circuit has adopted the McDonnell Douglas approach used in Title VII cases to analyze retaliation claims under the FMLA. See Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). One element the plaintiff must establish under this approach is that she suffered an adverse employment action. See id. An adverse employment action is one that results in a "materially adverse change" in the plaintiff's terms and conditions of employment. Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations omitted) (analyzing ADEA claim under McDonnell Douglas framework). The Funds rightly contends that none of the actions Lepore identifies constitutes an adverse employment action.

First, assuming that the Funds was indeed the unnamed employer that placed the Monster.com advertisement, there is no evidence that the terms and conditions of Lepore's employment have changed as a result of that action. Second, a negative performance evaluation without adverse consequences is not an adverse employment action. See Moore v. Potter, 353 F. Supp 2d 410, 415 (E.D.N.Y. 2005) (citation omitted). Here, not only was there no evidence of detrimental consequences from the criticisms in Lepore's evaluation, but the evaluation itself was mostly positive. Finally, a memorandum recording that the plaintiff was absent without leave and recommending immediate termination was held not to constitute adverse employment action when it had no ramifications. See Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283-84 (11th Cir. 1999). Here, the Funds' warning to Lepore that she would be subject to disciplinary measures if she took more leave was less severe than the

8

memorandum in <u>Graham</u> and also had no unfavorable consequences. Because Lepore has failed to raise fact issues that she suffered an adverse employment action, summary judgment is granted to the Funds on Lepore's retaliation claim.

## C. <u>The State Law Claims</u>

This Court has federal question jurisdiction over Lepore's surviving claim of interference with the exercise of FMLA rights. <u>See</u> 28 U.S.C. § 1331 (1993). Consequently, this Court has supplemental jurisdiction over Lepore's state law employment discrimination claims. <u>See</u> 28 U.S.C. § 1367(a) (1993). Accordingly, the Funds' motion to dismiss Lepore's state law claims for lack of subject matter jurisdiction is denied.

## III. CONCLUSION

For the reasons set forth above, summary judgment is denied on the claim of interference with exercise of FMLA rights, but granted on the retaliation claim. The Funds' Rule 12(b)(1) motion to dismiss the state law claims is denied.

**IT IS SO ORDERED.**
**New York, New York**
~~October~~ 2005
November 10, 2005

_____
U.S.D.J.